AXINN, VELTROP & HARKRIDER LLP
Delphine W. Knight Brown
114 West 47th Street
New York, NY 10036
Phone: (212) 728-2200
Fax: (212) 728-2201

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Roberta M. Brown,<br><br>     Plaintiff,<br><br>  -against-<br><br>Douglas Elliman Realty, LLC d/b/a<br>Douglas Elliman Real Estate and<br>Enzo Morabito,<br><br>     Defendants. | Case No. 17-cv-01132<br><br><br><br>**COMPLAINT AND DEMAND FOR<br>JURY TRIAL** |

  Plaintiff Roberta M. Brown, by her undersigned attorneys, pursuant to the applicable Federal Rules of Civil Procedure and the Local Rules of this Court, hereby submits this Complaint against defendants Douglas Elliman Realty, LLC d/b/a Douglas Elliman Real Estate ("Douglas Elliman") and Enzo Morabito ("Morabito") and demands a trial by jury of all claims and issues so triable.

### NATURE OF THE ACTION

  1.  This action is brought by plaintiff Roberta M. Brown ("Brown"), a licensed real estate broker in the State of New York, for non-payment of the commission owed to her by defendant Douglas Elliman resulting from the sale and purchase of real property located at in Quogue, New York (the "Property").

2. At all relevant times, Ms. Brown was a licensed New York real estate broker employed as a sales associate independent contractor by defendant Douglas Elliman, a real estate brokerage firm.

3. Ms. Brown obtained the listing agreement for the Property from the owners for defendant Douglas Elliman and also represented the buyers in a dual agency, which entitled her to commissions as both the listing agent and the selling agent, upon the sale of the Property.

4. Defendant Douglas Elliman has refused to pay Ms. Brown her commission, as sole listing and selling agent, amounting to hundreds of thousands of dollars that became contractually due to her upon the closing of the sale transaction involving the Property.

5. Ms. Brown seeks damages from defendant Douglas Elliman for breach of contract, unjust enrichment and *quantum meruit* for its failure to pay her the commission due to her in the amount of at least $336,000, plus interest and attorneys' fees.

6. Defendant Morabito tortiously interfered with Ms. Brown's contractual relationship with defendant Douglas Elliman and payment of her commission, as sole listing and selling agent, by procuring defendant Douglas Elliman's breach of its contractual obligation to pay Ms. Brown her commission without justification.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there exists complete diversity between the parties and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Plaintiff Brown is a resident of Pennsylvania. Defendants Douglas Elliman and Morabito are residents of New York.

8. This Court has personal jurisdiction over defendant Douglas Elliman because Douglas Elliman: (i) is incorporated in New York; (ii) has its corporate headquarters and a principal place of business in New York City; (ii) has transacted business in New York; (iv) regularly does and solicits business in New York; and (v) has intentionally acted in such a way as to cause injury to plaintiff Ms. Brown in New York.

9. This Court has personal jurisdiction over defendant Morabito because Mr. Morabito is a resident of the State of New York.

10. Venue is proper in this district by virtue of 28 U.S.C. §§ 1391 (b) and (c), because all defendants are residents of New York, this is the judicial district in which defendant Douglas Elliman is subject to the court's personal jurisdiction with respect to this civil action, and in which a substantial part of the property that is the subject of the action is situated.

## THE PARTIES

11. Plaintiff Roberta M. Brown is an individual who resides in Pennsylvania and at all relevant times was a licensed real estate broker in the State of New York.

12. Upon information and belief, defendant Douglas Elliman is a corporation organized and existing under the laws of the State of New York, whose corporate headquarters and principal place of business is located at 575 Madison Avenue, New York, New York 10022. Douglas Elliman also maintains an office at 104 Main Street, Westhampton Beach, New York 11978 among numerous other locations in the State of New York.

13. Upon information and belief, defendant Morabito is an individual who resides in New York.

## ALLEGATIONS COMMON TO ALL CLAIMS

14. In May 2016, defendant Douglas Elliman hired Ms. Brown as a sales associate independent contractor.

15. On or about May 18, 2016, Ms. Brown and defendant Douglas Elliman entered into an agreement entitled "Sales Associate Independent Contractor Agreement" (the "Agreement"), a copy of which is annexed as "Exhibit 1" hereto.

16. Paragraph 2 of the Agreement provides for the payment of commissions to Ms. Brown, and states, in pertinent part:

> The Sales Associate: (a) shall be paid a commission on his or her gross sales, if any without deduction for taxes, which commission shall be directly related to sales or other output;

17. Paragraph 3 of the Agreement provides that "[t]he sales associates commission on various transactions shall be in accordance with the Compensation Schedule negotiated from time to time between the parties hereto."

18. The "Compensation Schedule" referred to in Paragraph 3 of the Agreement, at all relevant times, provided that Ms. Brown's share of gross commissions when, and if, received by Douglas Elliman in any calendar year was seventy percent (70%) of the commissions that she earned for Douglas Elliman, subject to the other applicable terms and conditions set forth in the Schedule.

19. The Agreement states that "[t]his agreement is deemed to have been entered into and will be construed and interpreted in accordance with the laws of the State of New York."

20. On or about October 8, 2016, at the suggestion of a mutual friend, Ms. Brown contacted potential buyers for the Property (hereinafter referred to as the "Buyers"), to discuss the possibility of

their purchasing the Property, which was adjacent to their property on Dune Road in Quogue, New York.

21. Ms. Brown researched the Property on the Multiple Listing Service (MLS) and discovered that the Property was not currently on the market. A prior listing with defendant Douglas Elliman dating from April 2014 had expired in December 2015.

22. On or about October 8, 2016, Ms. Brown contacted a local attorney for the owners of the Property (hereinafter referred to as the "Hubers" or the "Sellers"). Their attorney confirmed that the listing was no longer active and indicated that he would contact the Hubers and let them know about her inquiry.

23. Mr. Huber immediately telephoned Ms. Brown and told her that the Property was currently off the market, the prior listing with Douglas Elliman had expired, and the Hubers did not intend to relist the Property with Douglas Elliman. However, because Ms. Brown had highly qualified buyers interested in the Property, Mr. Huber agreed to enter into a new listing agreement with Douglas Elliman with Ms. Brown as the listing agent, for a limited period and minimum price, in order for Ms. Brown to show the Property to her qualified buyers.

24. On or about October 16, 2016, Ms. Brown disclosed to both the Sellers and the Buyers that she could represent both parties as a dual agent, the listing agent and the selling agent, and they all agreed to that arrangement.

25. On or about October 21, 2016, the Sellers agreed to enter into an Open Listing Agreement with Ms. Brown as the listing agent for a three percent (3%) total commission upon the sale of the Property. Ms. Brown then sent the Sellers an Open Listing Agreement, signed by her as listing agent, and approved by her manager at defendant Douglas Elliman. The Sellers signed the Open Listing

Agreement, along with a rider prepared by the Sellers' attorney, providing that the listing was for a single transaction only at a minimum price and for a limited time period until November 11, 2016, for the Sellers and Buyers to execute a contract for the sale of the Property. A true and correct copy of the Open Listing Agreement and rider thereto is attached hereto as Exhibit 2.

26. Shortly thereafter, the Sellers and Buyers agreed to a price for the sale and purchase of the Property.

27. On October 28, 2016, Ms. Brown and Mr. Huber supervised general, environmental and wood infestation inspections of the Property.

28. Mr. Huber gave Ms. Brown, as listing agent, the security codes to the house, gates and security alarms to facilitate appraisers and other appointments necessary to complete the sale transaction.

29. Upon information and belief, beginning on or about October 22, 2016, defendant Morabito repeatedly contacted Mr. Huber and his attorney, even after the Sellers had entered into the Open Listing Agreement and before the parties had executed a contract for the sale of the Property, and threatened to pursue payment of a commission based on the prior expired listing for the Property. On October 31, 2016, defendant Morabito, Mr. Huber and his attorney participated on a conference call and defendant Morabito again threatened to pursue payment of a commission based on the prior expired listing. However, defendant Morabito refused to show Mr. Huber, or the Sellers' attorney, any evidence to support his claim. Mr. Huber reiterated that the prior listing had expired in 2015.

30. Defendant Morabito thus intentionally attempted to delay or prevent the parties from timely entering into a contract for the sale of the Property in accordance with Ms. Brown's Open Listing Agreement.

31.     Upon information and belief, Mr. Huber repeatedly told defendant Morabito that the prior listing had expired in 2015.

32.     Upon information and belief, on or about November 1, 2016, defendant Morabito reactivated his expired listing on the Douglas Elliman website, without permission from the Sellers and in violation of the terms of Ms. Brown's Open Listing Agreement, in another attempt to prevent the parties from entering into a contract for the sale of the Property which prohibited advertising the Property.

33.     Upon information and belief, defendant Morabito also attempted to delay or prevent defendant Douglas Elliman from providing a letter requested by the Sellers' attorney, after the October 31, 2016 conference call, stating that Sellers would only be obligated to pay one three percent (3%) commission, as set forth in Ms. Brown's Open Listing Agreement, in another attempt to prevent the parties from timely entering into a contract for the sale of the Property.  Douglas Elliman eventually provided the requested letter on November 4, 2016.

34.     Defendant Douglas Elliman ultimately provided the letter requested by the Seller's attorney on November 4, 2016.

35.     The Sellers and Buyers entered into a contract for the sale of the Property as of November 11, 2016.

36.     For almost two months, Ms. Brown worked with the Sellers and Buyers, as a dual agent, and numerous third party agencies and vendors to facilitate and effectuate the Closing of the sale of the Property.

37. On December 29, 2016, defendant Douglas Elliman provided the Sellers' attorney with its Commission Statement and Bill for the commission due upon the Closing in accordance with Ms. Brown's Open Listing Agreement for a three percent (3%) commission in the amount of $480,000.

38. The Closing of the sale and purchase of the Property occurred on January 6, 2016.

39. Ms. Brown attended the Closing, as the sole listing and selling agent.

40. At the Closing, Ms. Brown received the check for the commission made out to Douglas Elliman Real Estate in the amount of $480,000.  She delivered the check to Kent Rydberg, Manager of the Douglas Elliman Real Estate Westhampton Beach Office, for transmittal to defendant Douglas Elliman's corporate accounting department in New York City for deposit into defendant Douglas Elliman's bank account.

41. To date, despite Ms. Brown's numerous demands for payment, defendant Douglas Elliman has refused to pay Ms. Brown the commission owed to her, as the sole listing and selling agent, in the amount of at least $336,000.

## COUNT I
**(Breach of Contract Against Douglas Elliman)**

42. Ms. Brown repeats and realleges the allegations contained in paragraphs 1 through 41 as if fully set forth herein.

43. As a result of Defendant Douglas Elliman's breach of its contractual obligation to pay Ms. Brown her commission on the sale of the Property, pursuant to the Open Listing Agreement and her Agreement and Compensation Schedule, Ms. Brown has been damaged in an amount to be determined at trial, but not less than $336,000, and in addition to such damages, Ms. Brown is also entitled to recover interest thereon, costs and disbursements and attorneys' fees.

## COUNT II
### (Violation of the Duty of Good Faith and Fair Dealing Against Douglas Elliman)

44.     Brown repeats and realleges the allegations contained in paragraphs 1 through 43 as if fully set forth herein.

45.     Under New York law, each party to a contract has a duty of good faith and fair dealing toward the other party to the contract.

46.     Defendant Douglas Elliman, by its actions and inactions as set forth herein, violated its duty of good faith and fair dealing towards Ms. Brown by failing to pay her commission due pursuant to her Open Listing Agreement and Agreement and Compensation Schedule upon the sale of the Property.

47.     As a result of Defendant Douglas Elliman's breaches of its duty of good faith and fair dealing, Ms. Brown has been damaged in an amount to be determined at trial, but not less than $336,000, and in addition to such damages, Ms. Brown is entitled to recover interest thereon, costs and disbursements and attorneys' fees.

## COUNT III
### (Unjust Enrichment Against Douglas Elliman)

48.     Brown repeats and realleges the allegations contained in paragraphs 1 through 47 as if fully set forth herein, and pleads the below paragraphs 49 through 55 in the alternative to its contractual claims set forth above.

49.     Defendant Douglas Elliman specifically requested and Ms. Brown provided, with Douglas Elliman's knowledge, the services described herein for the benefit of Douglas Elliman at Ms. Brown's own expense with the understanding that Ms. Brown would be paid for those services in the form of her commission due upon the sale of the Property.

50. Defendant Douglas Elliman accepted and received Ms. Brown's services, and continues to retain the benefits thereof, the total commission paid at the Closing of the sale of the Property, improperly and without justification.

51. After Ms. Brown performed such services to facilitate and effectuate the Closing of the sale of the Property, Defendant Douglas Elliman has refused to pay the full amount due and owing for the services.

52. Defendant Douglas Elliman accepted and received the benefits of the services performed by Ms. Brown but improperly refused, without justification, to compensate Ms. Brown as agreed for such services.

53. On the basis of the foregoing, Douglas Elliman has been unjustly enriched by retaining Ms. Brown's $336,000 share of the $480,000 commission paid at the Closing of the sale of the Property, at the expense of Ms. Brown.

54. In equity and good conscience, Defendant Douglas Elliman should make restitution to Ms. Brown of the full amount of her commission by which Douglas Elliman has been unjustly enriched.

55. As a result of Defendant Douglas Elliman's conduct, Ms. Brown has been damaged in an amount to be determined at trial, but not less than $336,000, and in addition to such damages, Ms. Brown is entitled to recover interest thereon, costs and disbursements and attorneys' fees.

## COUNT IV
### (*Quantum Meruit* Against Douglas Elliman)

56. Ms. Brown repeats and realleges the allegations contained in paragraphs 1 through 55 as if fully set forth herein, and pleads the below paragraphs 56 through 62 in the alternative to its contractual claims set forth above.

57. Defendant Douglas Elliman specifically requested, and Ms. Brown provided in good faith, the services described herein for the benefit of Douglas Elliman, and Douglas Elliman agreed to compensate Ms. Brown as stated herein.

58. At the time Ms. Brown was performing the services, Defendant Douglas Elliman knew that Ms. Brown was performing the services, approved of those services, was aware that Ms. Brown expected to be paid her commission for the services, and accepted the value of Ms. Brown's services.

59. Defendant Douglas Elliman has failed and refused, without justification or cause, to compensate Ms. Brown for the reasonable value of the services rendered, as established by her agreed to commission as dual agent, and for the benefit it received therefrom.

60. Ms. Brown is entitled to the reasonable value of the services she rendered.

61. On the basis of the foregoing, Defendant Douglas Elliman is liable to compensate Ms. Brown in *quantum meruit* for the value of the services she rendered.

62. As a result of Defendant Douglas Elliman's conduct, Ms. Brown has been damaged in an amount to be determined at trial, but not less than $336,000, and in addition to such damages, Brown is entitled to recover interest thereon, costs and disbursements and attorneys' fees.

## COUNT V
### (Tortious Interference with Contract Against Enzo Morabito)

63. Brown repeats and realleges each and every allegation contained in paragraphs 1 through 62 of this complaint.

64. Upon information and belief, defendant Morabito was fully knowledgeable that: (1) Ms. Brown and Douglas Elliman had entered into the Agreement and a Compensation Schedule, pursuant to which Douglas Elliman was obligated to pay Ms. Brown commissions that she earned for her work as a

sales agent; (2) an Open Listing Agreement was signed by the Sellers with Ms. Brown as the listing agent; and (3) Ms. Brown was the procuring cause of the sale of the Property to the Buyers, who she also represented as a dual agent.

65. Upon information and belief, defendant Morabito intentionally procured defendant Douglas Elliman's breach of its Agreement with Ms. Brown and the Open Listing Agreement reflecting that Ms. Brown was the sole listing agent by, among other things, directly and indirectly, unfairly and maliciously: (a) inducing other employees at Douglas Elliman to treat Brown unlawfully and unfairly and fail to timely compensate her for the work she performed while at Douglas Elliman; and (b) inducing Douglas Elliman not to pay Ms. Brown the commission owed to her, as sole listing and selling agent, in connection with the sale of the Property.

66. Upon information and belief, defendant Morabito repeatedly contacted Mr. Huber and his attorney, before and after the Sellers had entered into the Open Listing Agreement with Ms. Brown as listing agent, and before the parties had executed a contract for the sale of the Property, and threatened to pursue payment of a commission based on his prior expired listing for the Property, in an effort to delay or prevent the parties from timely entering into a contract for the sale of the Property. Despite the Sellers confirming that the prior listing had long expired, defendant Morabito intentionally attempted to prevent Ms. Brown from receiving her commission as listing agent pursuant to her Open Listing Agreement.

67. Upon information and belief, defendant Morabito also unilaterally reactivated his expired listing on the Douglas Elliman website, without permission from the Sellers and in violation of the terms of Ms. Brown's Open Listing Agreement which prohibited advertising the Property.

68. Upon information and belief, defendant Morabito also attempted to delay or prevent Douglas Elliman from providing a letter requested by the Sellers' attorney, stating that Sellers would only be obligated to pay one three percent (3%) commission as set forth in Ms. Brown's Open Listing Agreement, in a further attempt to delay or prevent the parties from timely entering into a contract for the sale of the Property. Defendant Morabito thus intentionally attempted to prevent Ms. Brown from receiving her commission as listing agent pursuant to her Open Listing Agreement.

69. As a result of Defendant Morabito's intentional and unlawful conduct in asserting an unsupportable claim to a commission based on a prior expired listing agreement, defendant Douglas Elliman has not paid Ms. Brown her commission on the sale of the Property in breach of its contractual obligation to do so upon the sale of the Property.

70. Defendant Morabito had no legitimate justification for his actions, acted solely to harm Ms. Brown and used wrongful means to cause Douglas Elliman not to pay Ms. Brown her commission.

71. Consequently, defendant Morabito has interfered with the contractual relationship between Douglas Elliman and Brown, causing Ms. Brown substantial loss of revenue and profits, and severe emotional distress.

72. As a result of defendant Morabito's intentional conduct, Ms. Brown has been damaged in an amount to be determined at trial, and in addition to such damages, Ms. Brown is entitled to recover interest thereon, costs and disbursement and attorneys' fees, as well as punitive damages to prevent Mr. Morabito from acting in such a manner in the future.

**WHEREFORE**, Plaintiff Brown demands judgment against defendants Douglas Elliman and Morabito, as set forth herein, and for such other further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff Brown hereby demands a trial by jury of all issues so triable.

Dated: New York, New York
February 14, 2017

                        AXINN, VELTROP & HARKRIDER LLP

                        By:   /s/ Delphine W. Knight Brown

                              Delphine W. Knight Brown
                              114 West 47th Street
                              New York, NY 10036

                              Phone: 212.728.2200
                              Fax: 212.728.2201
                              Email: dknightbrown@axinn.com

                              *Attorneys for Plaintiff*